1

2                  UNITED STATES DISTRICT COURT

3                  EASTERN DISTRICT OF CALIFORNIA

4

5    | RACHEL PRESCOTT, individually | 1:10-CV-00592-OWW-GSA |
     | and as Guardian Ad Litem for | |
6    | minor Plaintiffs A.P., C.P., | |
7    | R.P., T.P., Y.P., and M.P.; | MEMORANDUM DECISION RE: |
     | and MARILYN PRESCOTT, | DEFENDANTS' MOTION TO DISMISS |
8    | | (Doc. 13) |

9                         Plaintiffs,

10        v.

11

12   COUNTY OF STANISLAUS, et al,

13                         Defendants.

14

15

16                  I.  **INTRODUCTION**

17        Defendants County of Stanislaus and Stanislaus County Sheriff

18   Adam Christianson now move, pursuant to Federal Rule of Civil

19   Procedure Rule 12(b), to dismiss portions of the complaint on

20   grounds, among others, that Sheriff Christianson is immune from

21   federal civil rights liability on the basis of *Venegas v. County of*

22   *Los Angeles*, 32 Cal.4th 820 (2004).

23        Plaintiffs are the successors-in-interest and surviving

24   relatives of Craig Prescott, who died while in custody at the

25   Stanislaus County Jail on April 13, 2009.  They oppose the merits

26   of the motion, particularly the applicability of *Venegas* to the

27   facts of this case.  Alternatively, they request an opportunity to

28   file an amended complaint.

                              1

## II.  FACTUAL BACKGROUND

This action involves the alleged violation of Craig Prescott's civil rights and other injuries.  The following facts are derived from the complaint, filed on April 6, 2010.

On April 13, 2009, Craig Prescott was in custody at the Stanislaus County Jail, awaiting trial for allegedly violating a restraining order obtained against him by his wife, Plaintiff Rachel Prescott.  Mr. Prescott had been in custody since April 7, 2009 and, according to the complaint, exhibited psychotic symptoms for several weeks prior to his death.  The complaint alleges that Mr. Prescott died as a result of an altercation in the jail between the deputies and Mr. Prescott.  Specifically, it is alleged that Mr. Prescott died following a cell extraction where he was forcibly removed "by the use of tasers and clubs."  Following the alleged altercation, Mr. Prescott was transported to the hospital where he was pronounced dead on April 15, 2009.

## III.  PROCEDURAL BACKGROUND

On April 6, 2010, Rachel Prescott,[1] individually and as guardian ad litem for decedent's minor children, filed the instant action against the County of Stanislaus, Stanislaus County Sheriff Adam Christianson, and California Forensic Medical Group, Inc.[2]

---

[1] According to the complaint, Rachel Prescott is decedent Craig Prescott's surviving wife and mother of his minor children. (Compl. ¶ 3.)  Plaintiff Marilyn Prescott is identified as the decedent's mother.  (Compl. ¶ 6.)

[2] Defendant California Forensic Medical Group, Inc. ("CFMG") is not a party to this motion and, as of September 27, 2010, has not separately filed a motion to dismiss Plaintiffs' complaint.

Plaintiffs alleged five causes of action: (1) Denial of Constitutional Right to "Enjoy Personal Safety and Security" in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;[3] (2) Denial of Constitutional Right to Adequate Medical Care in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (3) Failure to Train, Supervise, and Discipline Jail Staff in violation of Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (4) Denial of Plaintiffs' Right to Enjoy Continued Family Relations in violation of Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and (5) Wrongful Death pursuant to California Code of Civil Procedure § 377.60.

Plaintiffs seek $10,000,000.00 in compensatory damages, as well as punitive and special damages.

On June 24, 2010, Defendants County of Stanislaus and Sheriff Adam Christianson filed this motion to dismiss. (Doc. 13.)

Plaintiffs opposed the motion on August 31, 2010. (Doc. 15.)

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss can be made and granted when the complaint fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[3] Under the same heading, Plaintiffs allege that "Defendants and each of them used unreasonable and excessive force against him." (Doc. 2, ¶ 25.)

1    To sufficiently state a claim to relief and survive a 12(b)(6)

2  motion, a complaint "does not need detailed factual allegations"

3  but the "[f]actual allegations must be enough to raise a right to

4  relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

5  550 U.S. 544, 555 (2007).    Mere "labels and conclusions" or a

6  "formulaic recitation of the elements of a cause of action will not

7  do." Id. Rather, there must be "enough facts to state a claim to

8  relief that is plausible on its face." *Id.* at 570.    "To survive

9  a motion to dismiss, a complaint must contain sufficient factual

10 matter, accepted as true, to state a claim to relief that is

11 plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129

12 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).    "The

13 plausibility standard is not akin to a probability requirement, but

14 it asks for more than a sheer possibility that a defendant has

15 acted unlawfully.    Where a complaint pleads facts that are merely

16 consistent with a defendant's liability, it stops short of the line

17 between possibility and plausibility of entitlement to relief."

18 *Id.* (internal citation and quotation marks omitted).

19    In deciding whether to grant a motion to dismiss, the court

20 must accept as true all "well-pleaded factual allegations." *Iqbal*,

21 129 S.Ct. at 1950.    A court is not, however, "required to accept as

22 true allegations that are merely conclusory, unwarranted deductions

23 of fact, or unreasonable inferences." *Sprewell v. Golden State*

24 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v.*

25 *Wal-Mart Stores, Inc.*, --- F.3d ----, 2009 WL 1978730, at *3 (9th

26 Cir. July 10, 2009) ("Plaintiffs' general statement that Wal-Mart

27 exercised control over their day-to-day employment is a conclusion,

28 not a factual allegation stated with any specificity. We need not

**4**

accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows:  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal quotation marks omitted).

## V. DISCUSSION

### a.   *Merits*

Defendants move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the following claims contained in the complaint: (1) the first, second, and third claims advanced by Plaintiff Marilyn Prescott because she lacks standing; (2) the federal civil rights claims against Sheriff Christianson based on Eleventh Amendment immunity; and (3) if the Court finds that Mr. Christianson is immune under the Eleventh Amendment, all claims against Stanislaus County because Christianson "was acting as an arm of the State, not the County."

Plaintiffs oppose the motion, however, their opposition is limited to whether *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) controls the facts of this case, i.e., whether Sheriff Christianson is entitled to Eleventh Amendment immunity. Plaintiffs concede that Marilyn Prescott - the decedent's mother - lacks standing to sue on behalf of decedent Craig Prescott and that Rachel and Marilyn Prescott, in their individual capacities, did

not comply with the California Tort Claims Act, which requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.[4]  As to these claims, which Plaintiffs abandon, the motion is GRANTED.[5]

The substance of Defendants' motion is that Sheriff Christianson is an actor representing the State of California, not Stanislaus County.  Defendants rely on *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) for the proposition that "in all matters related to investigation of crime, training of subordinate officers and staff, and options for crime fighting tactics, the County Sheriff acts on behalf of the State in enforcing its laws and thus is a State actor."  Defendants further argue:

> In essence, the Sheriff promulgates and maintains policies to ensure that violators of California law are held to answer the charges filed against them by the district attorney, who acts on behalf of the State, in the Superior Court, which is a division of the State. Because the functions of Sheriff Christianson in this case can only be classified as benefitting and occurring on behalf of the State of California, he cannot be classified as being a policymaker for Stanislaus County.  Accordingly, he is immune from §

---

[4]  Plaintiffs' opposition provides, in relevant part: "Plaintiff regrets any ambiguity in the complaint that might lead one to suppose that Marilyn Prescott sues for wrongful death or for violation of Decedent's civil rights.  She sues only for violation of her own 14th Amendment right to enjoy the society and companionship of her deceased son as set forth in the Fourth Cause of Action."  (Doc. 15, at 4:10-4:14.)

[5]  Specifically, Plaintiffs abandon the following claims: (1) the first, second, and third claims of Marilyn Prescott; and (2) Rachel and Marilyn Prescott's wrongful death cause of action (Claim V).  At oral argument, the parties agreed that the minor children satisfied the California Tort Claims Act under the fifth cause of action.  That claim is advanced by Rachel Prescott in her capacity as guardian ad litem.

6

**1983 liability pursuant to the Eleventh Amendment as to any policy he makes regarding jail operations and training.**

(Doc. 13. at 5:11-5:17.)

Plaintiffs rejoin that *Venegas* is contrary with two Ninth Circuit decisions, *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549 (9th Cir. 2002) and *Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001). According to Plaintiffs, *Venegas* was "wrongly decided" and this Court is "bound to follow the Ninth Circuit's rulings [in Bishop and Brewster]." In addition, in the event *Venegas* applies, Plaintiffs argue that their federal claims survive because "Plaintiffs' Monell claim does not involve the Sheriff in 'law enforcement' activities.'" According to Plaintiffs, the suggestion that training, supervision, and discipline of jail personnel fall under the heading of "law enforcement activities," is nonsensical and "renders the term meaningless."

Section 1983 provides for a damages action against "[e]very person" who, while acting under color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The federal Constitution's Eleventh Amendment grants sovereign immunity from such suits not only to each of the fifty states but also to state officers. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). This is because a suit against a state officer "is no different from a suit against the State itself." *Id.*; *see Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (a federal action for monetary damages against an individual State official acting in his official capacity is barred by the Eleventh

7

Amendment in the same way that an action against the State is barred). The United States Supreme Court has held that cities, counties, and local officers sued in their official capacity are themselves "persons" for purposes of § 1983 and, although they cannot be held vicariously liable under § 1983 for their subordinate officers' unlawful acts, they can be held directly liable for constitutional violations carried out under their own regulations, policies, customs, or usages by persons having "final policymaking authority" over the actions at issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997). However, states and state officers sued in their official capacity are not considered persons under § 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity. *Howlett v. Rose*, 496 U.S. 356, 365 (1990). Whether this immunity applies to a particular governmental official is a question of federal law, but the "inquiry is dependent on an analysis of state law." *McMillian*, 520 U.S. at 786.

The framework for determining whether an official qualifies for Eleventh Amendment immunity in § 1983 claims was established by the United States Supreme Court in *McMillian*. An official represents a public entity (county or state) when he acts as a "final policymaker[ ] for the [public entity] in a particular area, or on a particular issue." *Id*. at 785. Courts look to state law for guidance in identifying such authority. Importantly, however:

> [t]his is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.

**8**

*Id*. at 786.

　　Citing *Venegas v. County of Los Angeles*, 32 Cal.4th at 839, Defendants argue that Sheriff Christianson is entitled to Eleventh Amendment immunity because he was acting on behalf of the state rather than the county with respect to the particular acts alleged to have caused the constitutional deprivations at issue in this case.　　In *Venegas*, the California Supreme Court held that "California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity."　　The court reasoned that Eleventh Amendment immunity applies to "situations in which ... sheriffs are actually engaged in performing law enforcement duties, such as investigating and prosecuting crime, or training staff and developing policy involving such matters."　*Id*. at 838.

　　*Venegas* does not control the facts of this case.　　Contrary to Defendants' contentions, the question of whether the sheriff is a county or state official is not purely one of state law in a federal civil rights action.　　Rather, "federal law provides the rule of decision in section 1983 actions."　*See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997) ("[T]he question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law.　But that federal question can be answered only after considering the provisions of state law that define the agency's character."); *see also Weiner v. San Diego County*, 210 F.3d 1025, 1028-29 (9th Cir. 2000).　　In this context,

*Brown v. County of Kern*, No.06-CV-00121-OWW-TAG, 2008 WL 544565 (E.D. Cal. Feb. 26, 2008) is instructive.  Moving defendants in *Brown*, like here, contended that they were "state policymakers entitl[ed] to the protections of the Eleventh Amendment which provides that the actions against state agents are barred except in limited circumstances."  *Id.* at *11.  *Brown* found that *Venegas* "directly conflicted" with the earlier Ninth Circuit decision, *Brewster v. County of Shasta*, 275 F.3d 803 (9th Cir. 2001), which held that California Sheriffs act locally on behalf of the county when investigating crimes:

> The Venegas decision does not overturn Ninth Circuit precedent on this issue regarding a federal statute and does not control on issues of federal law.  The "ultimate issue is whether or not California sheriffs are subject to liability under 42 U.S.C. § 1983 when executing their law enforcement duties" and "[t]his is an ultimate question of federal law even though it requires application of some principles of state law to resolve it," Brockmeier, 35 A.D.3d 1277, 825 N.Y.S.2d 390, 2006 WL 3760275, at *6. "[T]he question of municipal liability under section 1983 is one of federal law." Streit v. County of Los Angeles, 236 F.3d 552, 560 (9th Cir. 2001) ("even if [ Peters ] were on all fours we would not be bound by its conclusions regarding section 1983 liability because such questions implicate federal, not state law".)  Until the Ninth Circuit addresses this issue and abrogates the Brewster decision, this Court is bound by Ninth Circuit precedent.

*Id.* at *12.

This language applies with equal force to the facts of this case.

Recognizing the conflict between the California Supreme Court and the Ninth Circuit on this issue, Defendants suggest that *Brewster* is no longer good law because it was decided pre-*Venegas*. This argument was advanced - and rejected - in *Brown v. County of*

10

*Kern*, 2008 WL 544565, *Smith v. County of Los Angeles*, 535 F. Supp. 2d 1033 (C.D. Cal. 2008), and *Armstrong v. Siskiyou County Sheriff's Dept.*, No. CIV-S-07-1046-GEB-GGH, 2008 WL 686888 (Mar. 13, 2008 E.D. Cal.).  *Brown* provides, in relevant part:

> The Brewster court did not have the benefit of the analysis in the later California Venegas case.  "The Venegas court challenges the holding in Brewster, mistakenly asserting that the Ninth Circuit failed to follow the 'guidance given by [California state cases] McMillian, Pitts and Peters.'"  Brockmeier, 2006 WL 3760276, at *8.  However, the Brewster court did apply and follow the U.S. Supreme Court's McMillian decision in great detail, conducting a thorough and expansive analysis, reviewing relevant statutory and constitutional provisions in deciding to address whether California sheriffs act on behalf the state or county when investigating crimes.  The court carefully analyzed and specifically rejected the Pitts and Peters decisions which were analyzed with different results by the Venegas court.  See Brockmeier, 35 A.D.3d 1277, 825 N.Y.S.2d 390, 2006 WL 3760275, at *8 (lengthy discussion and analysis of Venegas and Brewster); see also Brewster, 275 F.3d at 807-811.

2008 WL 544565, at *11.

*Armstrong v. Siskiyou County Sheriff's Dept*. further explained:

> Defendants' argument that Venegas should control because [it was] decided after Brewster is without merit.  Although the Ninth Circuit has not revisited this matter since Venegas, it is clear that federal claims must be ruled by federal law, i.e., that Brewster must control in this federal § 1983 action, thus rendering the Siskiyou County Sheriff's Department, its Sheriff and deputies, county actors without Eleventh Amendment immunity.  Accord, e.g., Brockmeier v. Solano County Sheriff's Department, 2006 WL 3760276 (E.D. Cal. 2006);  Faulkner v. County of Kern, 2006 WL 1795107 (E.D. Cal. 2006); Garcia v. City of Merced,, --- U.S. ----, 128 S.Ct. 1090, 169 L.Ed.2d 827, 2008 WL 114201 (E.D.Cal.2008);  see also Meyers v. Pope, 2006 WL 1867656 (E.D.Cal.2006) (county sheriff, supervised by county of board of supervisors, acts on behalf of county in management and oversight of county jails, citing Brewster, supra, 275 F.3d at 808, and Cortez, supra, 294 F.3d at 1190, 1191).

> **Accordingly, defendants will be considered county actors for purposes of this action, or "persons" under section 1983, without recourse to Eleventh Amendment immunity.**

**2008 WL 686888, at *6-7.**

**To the extent the conduct at issue in this case constitutes "law enforcement" duties, the court is bound by Ninth Circuit precedent, specifically, *Brewster v. County of Shasta*, 275 F.3d 803. *Venegas* does not overrule Ninth Circuit precedent on this issue. Well-established Supreme Court and Ninth Circuit precedent make clear that federal not state law is supreme on issues of federal law. Until the Ninth Circuit readdresses the issue and abrogates *Brewster*, such authority is controlling. Defendants' motion to dismiss Plaintiffs' federal civil rights claims on the grounds that Sheriff Christianson is immune because he acts on behalf of the State of California is DENIED.**

**There are additional grounds to deny Defendants' motion to dismiss. Even assuming, *arguendo*, that *Brewster* is not controlling, this case is factually distinguishable from *Venegas*. *Venegas* involved a claim by a couple that the Los Angeles County Sheriff and his Department executed an unreasonable search of their home and vehicle. Searching a car and home as part of a criminal investigation is unquestionably a law enforcement activity. In contrast, withholding/restricting medication and/or treatment from an inmate (who exhibited psychiatric symptoms) and forcibly extracting an inmate from a cell, involves jail oversight and management. In the context of jail oversight/management and the deliberate indifference to medical needs, Courts have held that Sheriffs act for the County, not the State. *See, e.g., Streit v.***

*County of Los Angeles*, 236 F.3d 552, 561 (9th Cir. 2001) (reviewing California's constitution, codes, and case law, and concluding that a sheriff acts on behalf of the county in "the oversight and management of the local jail"); *Vega v. County of Yolo*, No. 2:09-CF-00574-MCE-KJM, 2009 WL 1992532, at *4 (E.D. Cal. July 8, 2009) ("[E]ven if Venegas were binding authority, it is inapplicable to the present case.  Venegas held that the sheriff acts on behalf of the state 'while performing state law enforcement duties such as investigating possible criminal activity.'  Because Venegas involved an unreasonable search and seizure claim, which arose during the sheriff's performance of a core law-enforcement function, it is wholly dissimilar to the instant case [involving deliberate indifference to medical needs] both in its facts and in the principle for which it stands."); *Smith v. County of Los Angeles*, 535 F. Supp. 2d 1033, 1037 n. 1 (same).  *Venegas* is distinguishable and not controlling.

At oral argument on September 15, 2010, counsel for Defendants argued that *Streit v. County of Los Angeles*, 236 F.3d 552, was flawed for two reasons.  First, counsel argued that *Streit* was no longer good law because it was decided pre-*Venegas*.  As explained above, that argument is misplaced.  *See, e.g., Vega v. County of Yolo*, 2009 WL 1992532, at *3.  Second, counsel argued that *Streit* is distinguishable because it involved "the policy of not releasing prisoners until recent holds and warrants were checked," not the medical and physical treatment of a pretrial detainee.  According to counsel, the sole analytical guidepost in the pretrial detainee context is that "California statutes treat sheriffs [] under the direct supervision of the attorney general in law enforcement

functions, including [pretrial] detention [...] the enforcement of law enforcement activities do not end once a person is awaiting trial."  In this case, the decedent was held in a county jail, not a state correctional or detention facility.

Although *Streit* is not on all fours with this case, it did analyze what, if any, impact the California Attorney General's role had on the *McMillin* analysis.  Counsel conveniently overlooks this analysis when arguing for an extension of *Venegas* and *McNeely v. County of Sacramento*, Nos. 2:05-CV-1401-MCE-DAD and 2:05-cv-2549-MCE-DAD, 2008 WL 489893 (E.D. Cal. Feb. 20, 2008), a factually distinguishable case decided by Judge England.  In *Streit*, the Ninth Circuit explained the interplay between Sheriffs and relevant state statutes/authorities, finding that it did not control the *McMillian* analysis:

> Unlike the Alabama Constitution, the California Constitution does not list sheriffs as part of "the state 'executive department.' " McMillian, 520 U.S. at 787, 117 S.Ct. 1734 (finding this designation "especially important" for determining liability). Instead, Article XI, section 1(b) of the California Constitution designates sheriffs as county officers. Cal. Const. art. XI, § 1(b) ("The Legislature shall provide for ... an elected county sheriff ...."); see also DeGenova v. Sheriff of DuPage County, 209 F.3d 973, 976 (7th Cir. 2000) (noting that the Illinois Constitution's designation of sheriffs as county officers "strongly indicates that the Sheriff is an agent for the county, and not the State"). Indeed, "[n]ot only does the California Constitution lack the provisions most important to the Supreme Court's decision in McMillian, its provisions read much like those of the Alabama Constitution prior to that State's determined effort to clarify that sheriffs were acting for the State when exercising their law enforcement functions." Roe v. County of Lake, 107 F. Supp. 2d 1146, 1149 (N.D.Cal. 2000); see McMillian, 520 U.S. at 788, 117 S.Ct. 1734. Thus, under the California Constitution, the LASD is generally a county, not state, agency. Even more critical to our analysis, there is no provision in the California Constitution that states that the LASD acts for the state when

managing the local jails.

The California Government Code also supports the conclusion that the LASD operates for the County when administering local prison policy. Although the California Attorney General, like the Alabama Attorney General in McMillian, has statutory control over the sheriffs in a law enforcement capacity, in California, the counties hold the ultimate power over the jails. Compare Cal. Gov. Code § 12560 (granting the Attorney General power over the sheriffs' activities relevant to the "investigation or detection of crime"), with Cal. Gov. Code § 25303 (granting the county boards of supervisors broad fiscal and administrative powers for the management of the individual county jails so long as the boards do not "obstruct the investigative function of the sheriff of the county"). The counties retain the power to transfer control of a county jail from the sheriff to a county-created department of corrections, suggesting that the counties actually control and operate the jails, and not the state via the sheriffs. Cal. Gov. Code § 23013;  Beck v. County of Santa Clara, 204 Cal.App.3d 789, 793 (1988). We find that sections 23013 and 25303 weigh heavily in favor of our conclusion that the LASD's jail-release policies are a county function and a county concern. See Dotson v. Chester, 937 F.2d 920, 928 (4th Cir. 1991) (interpreting a Maryland statute virtually identical to section 23013 and concluding that because "state statutes confer authority on the counties to transfer control of the jail from the sheriff to a county warden," it has "no doubt but that sheriffs are final policymakers for counties when operating jails" (emphasis added)). Thus, under these state statutes, the County, not the state, oversees the local jails, and the LASD, as the administrator of those jails, acts for the County.

Other provisions in the California Government Code further support the County's liability for the LASD's actions. Under California law, monetary damages for section 1983 claims are paid by the County and not the state. Cal. Gov. Code § 815.2. This crucial factor weighs heavily toward finding that, in the cases at hand, the LASD functions as a county, rather than a state, agency. See McMillian, 520 U.S. at 789 (stating that it was "critical[ ] for our case" and "strong evidence in favor of the ... conclusion that sheriffs act on behalf of the State" that a judgment against the sheriff would be a suit against the state, and that the county would not be liable for a sheriff's acts under respondeat superior). In California, sheriffs are elected county officers. See Cal. Gov. Code § 24000(b) (providing that a sheriff be included as one of the county officers); Cal. Elec.Code § 314 (defining a

15

1

2

3

4

5

6

7

8

"county officer" as "any elected officer enumerated in ... Section 24000 ... of the Government Code."). Sheriffs are required to have their offices at the county seat with the other county officers, Cal. Gov.Code § 24250; their vacancies are filled as "provided by law for filling elective county offices;" Cal. Gov. Code § 24205; and their services are contracted out by the counties-not the state. See Cal. Gov.Code § 53069.8; see also County of Los Angeles Charter §§ 56, 56, 56. These various state provisions lead inexorably to the conclusion that the LASD is tied to the County in its political, administrative, and fiscal capacities. Therefore, the County appears subject to liability for the LASD's actions.

9

*Id.* at 561-62 (footnotes omitted).[6]

10   Here, Defendants overly parse the Ninth Circuit's opinion in

11   *Streit*, which applied the *McMillian* framework to determine that a

12   sheriff acts on behalf of the County in the oversight and

13   management of the local jail. *See id.* at 561 ("even if we view the

14   function more broadly as the oversight and management of the local

15   jail, we are compelled to agree with the district court that the

16   Sheriff acts for the County in this management function [...]

17   [t]his conclusion is based on our own independent analysis of

18   California's constitution, statutes, and case law."). Although

19   *Streit* is not dispositive of the instant facts, its reasoning is

20   instructive. Moreover, as explained in detail below, *McNeely* does

21   not stand for the proposition that Sheriffs are entitled to

22   eleventh amendment immunity concerning all pretrial conduct at the

23   county jail, including allegations of excessive force. Rather,

24   *McNeely* is limited to "simple detainee" situations. Defendants'

25

26   _____

27   [6] The complete *McMillian* analysis is reproduced to demonstrate that the Ninth Circuit reviewed "California's constitution, codes, and case law," concluding that a sheriff acts on behalf of the county in the oversight and management of the local jail.

28

attempt to expand the outer boundaries of Eleventh Amendment immunity jurisprudence is unavailing.

Sheriff Christianson's reliance on *McNeely v. County of Sacramento* and other cases finding Eleventh Amendment immunity in "simple detainee" situations is misplaced.[7] Defendants argue that Sheriff Christianson is entitled to immunity because "persons detained at the jail, such as Craig Prescott, have been arrested for committing crimes violating state law and are awaiting trial [...] [such] function [] can only be classified as benefitting and occurring on behalf of the State of California." Citing *McNeely*, Defendants assert that "[t]he Eastern District of California has already granted Eleventh Amendment immunity to Sheriffs in a custodial setting."

*McNeely*, a case not binding on any court, involved allegations of excessive incarceration after the Ninth Circuit granted Plaintiff's habeas petition and ordered that the Sacramento County criminal charges against him be dismissed with prejudice.  In accordance with that directive, the District Court ordered that Plaintiff be released on Friday, July 25, 2003.  The next business day, Sacramento County jail personnel notified Placer County, where Plaintiff was subject to a detainer warrant, that Plaintiff was available for pick up.  Placer County retrieved Plaintiff on or

_____

[7] *McNeely* distinguished *Brewster* and *Streit* on grounds that "[h]ere, there can be no question that Sheriff Blanas, as well as Sheriff Bonner, were acting in accordance with both facially valid warrants as well as duly authorized criminal proceedings instituted by the District Attorneys of their respective counties and pending before their courts."  *McNeely* is factually distinguishable.  This case involves alleged deliberate indifference to medical needs and use of excessive force in the county jail.

about July 31, 2003 and transported him to Placer County where he remained incarcerated in the Placer County Jail until December 9, 2004, when Magistrate Judge Peter Nowinski ordered him released. On July 15, 2005, District Judge David F. Levi granted his petition for habeas corpus and ordered not only that he be released from custody, but also that Placer County make no further attempt to revoke his probation based on the charges of the probation revocation petition.  Plaintiff then sued Sacramento and Placer Counties for excessive pretrial incarceration in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.[8]

Sacramento County Defendants moved for summary judgment, arguing that it was entitled to Eleventh Amendment immunity because it was "acting on behalf of the State of California in detaining Plaintiff pursuant to pending criminal proceedings, and a facially valid bench warrant issued by the Placer County Superior Court."[9] The Court agreed, finding that "[w]hile the Ninth Circuit has treated the sheriff as a county actor where his administrative or investigative responsibilities are under scrutiny, those cases are

---

[8] Specifically, Plaintiff sued, pursuant to 42 U.S.C. § 1983, the Sacramento County and Placer County, their respective Sheriff's Departments, and the individual Sheriffs themselves on grounds that he was wrongfully incarcerated at both the Sacramento and Placer County jails.

[9] Placer County Defendants also moved for summary judgment, arguing that Sheriffs can be held liable under *Monell* as a county actor only in "instances regarding the release of inmates who have either completed their sentences or to situations where no valid prosecution is pending." *McNeely*, 2008 WL 489893, at *5.  However, it was undisputed that no such facts existed.  The *McNeely* Court stated that such an argument was "compelling."

1  distinguishable from the present case, which concerns conduct

2  arising from *simply detaining* Plaintiff in jail pending the outcome

3  of ongoing criminal proceedings in Sacramento and Placer Counties."

4  *Id*. at \*4 (emphasis added).  Citing *Coverdell v. Dep't of Social &*

5  *Health Servs.*, 834 F.2d 758, 764-65 (9th Cir. 1987), the Court held

6  that the Sheriffs were immune because "[p]ersons who faithfully

7  execute valid court orders are absolutely immune from liability for

8  damages in civil rights actions challenging conduct authorized by

9  the order":

10          Here, there can be no question that Sheriff Blanas, as
            well as Sheriff Bonner, were acting in accordance with
11          both facially valid warrants as well as duly authorized
            criminal proceedings instituted by the District
12          Attorneys of their respective counties and pending
            before their courts [...]
13
            The Sacramento Defendants correctly point out that it
14          is not up to the sheriff to release a detainee like
            Plaintiff while criminal charges filed on behalf of the
15          State of California are pending, whether in Sacramento
            or Placer County.  Plaintiff himself concedes that a
16          sheriff lacks discretion to simply release a detainee
            while criminal charges are being pursued and the
17          detainee is held pursuant to court order.  Even after
            the Sacramento County proceedings were dismissed
18          following the Ninth Circuit's ruling of July 17, 2003,
            the Placer proceedings remained ongoing, and Sacramento
19          had notice of Placer County's September 24, 1998 bench
            warrant as well as the subsequent detainer warrant
20          directing that Placer County be notified if Plaintiff
            was released from the custody of Sacramento County so
21          that pickup by Placer could be arranged.

22  Id at \*5 (internal quotations omitted).  The emphasis was on the

23  enforcement of orders of courts with state-wide jurisdiction.

24      *McNeely* has little, if any, bearing on the analysis in this

25  case.  Courts have held that a sheriff is a state actor in actions

26  arising from a detainee's arrest and incarceration from an

27  outstanding warrant.  *See, e.g., Walker v. County of Santa Clara*,

28  No.C-04-02211 RMW, 2005 WL 2437037, at \*4 (N.D. Cal. Sep. 30,

2005); *McNeely*, 2008 WL 489893 at *5.  However, those are different cases.  Here, Plaintiffs do not allege that decedent Craig Prescott was in custody on a faulty warrant or detained for unlawful reasons.  Rather, Plaintiffs allege that the County of Stanislaus and Sheriff Christianson did not provide decedent Craig Prescott with "adequate medical and psychiatric care while he was in jail" and "used excessive and unreasonable force" against him. Plaintiffs' allegations present a completely different factual scenario than those of the "simple detainee precedents" cited by Defendants.  *McNelly* and *Walker* are factually distinguishable.

        b.   *Conclusion*

        Sheriff Christianson is not entitled to immunity on the basis of *Venegas v. County of Los Angeles*, 32 Cal.4th 820, which directly conflicts with Ninth Circuit's opinion in *Brewster v. Shasta County*, 275 F.3d 803.  To the extent the conduct at issue in this case constitutes "law enforcement" duties, the court is bound by *Brewster*, which is good law.  In addition, *McNelly* and *Walker*, two custodial cases cited by Defendants, do not dictate a different result.  This is not a detainee case involving allegations of overdetention.  As such, it falls outside the cases cited by Defendants.  If discovery reveals otherwise, the issue can be addressed pursuant to a Rule 56 motion.

        Defendants' attempt to expand the outer boundaries of Eleventh Amendment immunity jurisprudence is unavailing.  Defendants' motion to dismiss Plaintiffs' federal civil rights claims on the grounds that Sheriff Christianson acts on behalf of the State of California is DENIED.

**VI.  <u>CONCLUSION</u>**

**1.  Defendants' motion to dismiss Plaintiff Marilyn Prescott's first, second, and third causes of action is GRANTED.**

**2.  Defendants' motion to dismiss Plaintiffs Rachel and Marilyn Prescott's state law wrongful death claim is GRANTED.**

**3.  Defendants' motion to dismiss Plaintiffs' federal civil rights claims on the basis of Eleventh Amendment immunity is DENIED.**

**Plaintiffs shall submit a form of order consistent with, and within five (5) days following electronic service of, this memorandum decision.   Defendants shall respond to the complaint within twenty ("20") days of lodging of the Order.**

IT IS SO ORDERED.

**Dated:   September 27, 2010**          **/s/ Oliver W. Wanger**
                                     UNITED STATES DISTRICT JUDGE