IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL PRESCOTT, et al., | Case No. 1:10-cv-00592 JLT |
| Plaintiffs, | AMENDED ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO COMPEL DEPOSITIONS |
| vs. | |
| COUNTY OF STANISLAUS, et al., | (Doc. 56) |
| Defendants. | ORDER GRANTING DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES |
| / | (Doc. 57) |

Defendants County of Stanislaus and Adam Christianson, Chad Blake, Gary Lake, Adam Voortman, Shaun Murphy, Brian Munguia, Santos De Los Santos, Richard Aziz, and John Boy Palarca (herein "Defendants") now move to compel non-parties Dr. James Pick and Byron Miller to submit to oral depositions and for an order compelling Byron Miller to comply with a previously served subpoena duces tecum. In addition, Defendant County of Stanislaus ( "County") moves to compel Plaintiff Marilyn Prescott to respond to County's previous document requests and Plaintiff A.P. to respond to interrogatories and document requests. Plaintiffs filed an opposition to Defendants motion to compel depositions on November 9, 2011 but only regarding the subpoena seeking mental health records of Rachel Prescott. Plaintiffs A.P. and Marilyn Prescott did not oppose the motion to compel the discovery requests.

The Court heard oral argument on these matters on November 21, 2011. Though Defendants' appeared through counsel, there was no appearance by Plaintiffs and no appearance by Dr. Pick nor Byron Miller. For all the reasons set forth below, the Court **DENIES** the motion as to Dr. Pick and **GRANTS** the motion **IN PART** as to Byron Miller and **GRANTS** County's motion to compel the written discovery.

I. BACKGROUND

    A. **Plaintiffs' Allegations**

This action is proceeding on Plaintiffs' first amended complaint. (Doc. 35.) Plaintiffs allege the following. On April 7, 2009, Plaintiffs' decedent, Craig Prescott, was detained at Stanislaus County Jail.[1] (Id. at 4.) Over the next few days, Mr. Prescott exhibited "bizarre" behavior consistent with drug psychosis. (Id. at 5.) On April 11, 2009, officials decided to extract Mr. Prescott from his cell. (Id.) When Mr. Prescott resisted, jail officials elected to use less than lethal force, such as Tasers and water balls, to subdue Mr. Prescott. (Id.) Mr. Prescott died as a result of the altercation. (Id. at 5-6.) Plaintiffs now seek monetary damages for the use of excessive force, inadequate medical care, failure to supervise and train, and deprivation of familial relations in violation of the Fourteenth Amendment. (Id. at 6-10.) Plaintiffs also seek to recover for wrongful death. (Id. at 9.)

    B. **Events Relevant to the Pending Motions**

        1. Previous motion to compel

On May 23, 2011, the Court granted Defendants' motion to compel Stanislaus County Behavioral Health and Recovery Services to produce mental health treatment records for Craig Prescott within 10 days. (Doc. 49)

        2. Depositions of Pick and Miller and Defendants' subpoenas duces tecum

On August 12, 2011, Defendants' counsel sent Dr. Pick a notice of the deposition by mail and set the date of the deposition for September 15, 2011. (Doc. 56-2 at 2.) Though unable to personally serve Dr. Pick, Defendants sent a copy of the subpoena to Dr. Pick via certified mail on August 29, 2011.

---

[1] The first amended complaint is inconsistent when referring to the year in which the alleged events took place. Nevertheless, the alleged events appear to have taken place in 2009, as the other years indicated (2010 and 2011) cannot be harmonized with the fact that Plaintiffs initiated this action on April 6, 2010.

2

1  (Id.) Dr. Pick failed to appear for his scheduled deposition on September 15, 2011. (Id.)

2      On August 25, 2011, Defendants personally served Byron Miller a notice of his deposition, set for September 12, 2011. (Doc. 56-2 at 2.) However, on August 29, 2011, Defendants received a letter from Mr. Miller stating that he would not appear for his deposition without first receiving consent (presumably, given by Rachel Prescott) or unless ordered by the Court. (Doc. 56-2 at 3.) Before this, on July 29, 2011, Defendants personally served two separate subpoenas duces tecum upon Byron Miller, requesting the production of records relating to the Mr. Miller's counseling of Craig Prescott and Rachel Prescott. (Doc. 56-2 at 3.) Once again, on September 7, 2011, Defendants received a letter from Mr. Miller indicating that he would not produce the requested records pertaining to the counseling performed with Craig Prescott and Rachel Prescott "without a Consent or Court Order." (Doc. 56-2 at 3.) Mr. Miller has both refused to appear for his deposition and refused to produce the requested documents without a consent or court order. (Doc. 56-2 at 3.)

    On October 14, 2011, Defendants filed a motion to compel the attendance of Dr. Pick and Mr. Miller for depositions as well as Mr. Miller's production of the requested documents. (Doc. 56). On October 19, 2011, Defendants filed a certificate of service indicating they had served both Dr. Pick and Mr. Miller of the motion to compel their depositions by regular mail. (Doc 64). On November 9, 2011, Plaintiff filed an opposition to Defendant's motion to compel the depositions. (Doc. 72.) In her opposition, Plaintiff objects only to the production of her own mental health records. Id. at 2. In particular, she claims that because she is asserting a "garden variety" claim for emotional distress, her mental health has not been put at issue. Id.

    3.    <u>County's interrogatories and document request</u>

    Defendant, Stanislaus County, filed a second motion to compel on October 14, 2011. Therein, Stanislaus County seeks responses to two sets of production requests from Marilyn Prescott that were served in March and May 2011 and responses to interrogatories and production requests from Plaintiff A.P., served in March 2011. Both Plaintiffs have yet to respond to counsel's request. (Id., Ex. C.) Accordingly, on April 20, 2011, Defendants filed the instant motion to compel. (Doc. 38.)

///

///

3

## II. DISCUSSION

### 1. Subpoenas to Dr. Pick and Byron Miller

A subpoena shall "command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person." F.R. Civ. P. 45(a) (1)(iii). The issuing court may hold a person in contempt for failing to obey a subpoena. F.R. Civ. P. 45(e). "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court." Higginbotham v. KCS Int'l, Inc., 202 F.R.D. 444, 455 (D.Md.2001) (citing Advisory Committee Notes to Rule 45(a) 1991 amend. ["Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions"] ); Halawani v. Wolfenbarger, No. 07-15483, 2008 WL 5188813, *7 (E.D.Mich. Dec.10, 2008) (same).

A civil contempt sanction is designed to force the contemnors to comply with an order of the court and thus to affect discovery. Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 207, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999).  Courts have inherent power to enforce their orders through civil contempt. See Spallone v. United States, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), citing Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Civil contempt is characterized by the court's desire to compel obedience with a court order, or to compensate the contemnor's adversary for the injuries which result from the non-compliance. Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 778 (9th Cir.1983). A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders. Stone v. City of San Francisco, 968 F.2d 850, 856 (9th Cir. 1992).

#### *A.   Dr. Pick*

Defendants attest that they made efforts to serve Dr. Pick a subpoena but, when the process server appeared at Dr. Pick's home, Dr. Pick was not there and the woman who answered the door refused to accept service. (Doc. 56, Ex 2 at 2) Afterward, Defendants mailed a copy of the subpoena to Dr. Pick via certified mail. Id. Defendants don't report whether Dr. Pick signed for or received the certified mail.

1    Personal service of a deposition subpoena is required by Fed. R. Civ. P. 45(b)(1). Rule 45(b)(1)
2 reads, "Any person who is at least 18 years old and not a party may serve a subpoena. **Serving a**
3 **subpoena requires delivering a copy to the named person** and, if the subpoena requires that person's
4 attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." (Emphasis
5 added). A majority of courts interpret "delivering" to require personal service. San Francisco BART
6 Dist. v. Spencer, 2006 U.S. Dist. LEXIS 73140 (N.D. Cal. Sept. 25, 2006); Alexander v. Cal. Dep't of
7 Corr., 2011 U.S. Dist. LEXIS 34398 at *17-18 (E.D. Cal. Mar. 16, 2011) (personal service required
8 under Rule 45(b)(1)); Collagen Nutraceuticals, Inc. v. Neocell Corp., 2010 U.S. Dist. LEXIS 98228
9 (S.D. Cal. Sept. 17, 2010) ("Rule 45 mandates personal service for subpoenas.") Though the Ninth
10 Circuit has not issued a published opinion on this topic, more than a decade ago, in Chima v. United
11 States Dep.t of Defense, 23 Fed. Appx. 721 at *6-7 (9th Cir. Dec. 14, 2001), the Court issued an
12 unpublished decision affirming trial court's refusal to compel compliance with subpoena that was served
13 by mail. Moreover, "[t]he longstanding interpretation of Rule 45 has been that personal service of
14 subpoenas is required. The use of the word 'delivering' in subdivision (b)(1) of the rule with reference
15 to the person to be served has been construed literally." Wright & Miller, 9A Fed. Prac. & Proc. Civ. §
16 2454 (3d ed.) (fns. omitted); accord, 9 Moore's Fed. Prac. § 45.21 (3d ed. 2010) (noting that majority
17 of courts require personal service of subpoenas duces tecum).

18    Because the subpoena was not properly served on Dr. Pick, the Court lacks the authority to
19 compel compliance with it.[2]

20    *B.    Byron Miller*

21    As to Mr. Miller, there are no service concerns. Defendants properly served the subpoena
22 personally. (Doc. 56-2 at 27) Nevertheless, Mr. Miller provided a written reply and indicated that he
23 would not appear. In light of Mr. Miller's failure to comply with the depositions, the Court will construe
24 Defendants' motion to compel the deposition as application for an order to show cause why a contempt
25 citation should not be issued for their failures to appear at the deposition or Mr. Miller failure to respond

---

[2] Though Defendants imply that Dr. Pick has made efforts to evade service (Doc. 57 at 3), there is no evidence to support this claim. Instead, the only inference from the evidence provided is that the sole attempt at serving him personally failed merely because he was not at home when the process server attempted service there. (Doc. 56-2 at 2) Moreover, as noted above, the Court has no information whether Dr. Pick received the subpoena sent by certified mail. At oral argument, counsel had no additional information that would bolster the claim that Dr. Pick has evaded service.

5

to the document requests and will issue the order and set the matter for immediate hearing.[3] Alcalde v. NAC Real Estate Investments & Assignments, Inc., 580 F.Supp2d 969, 971 (CD CA 2008); Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial at ¶ 11:2316; F.R. Civ. P. 45(e). Byron Miller is **ORDERED** to appear for his deposition no later than December 2, 2011 at a date and time convenient to Defendants.

    2.  Plaintiff's Opposition to the subpoena duces tecum to Mr. Miller

In Plaintiff's Opposition, filed on November 9, 2011, (Doc. 72), Rachel Prescott contends that discovery of her mental health records should not be allowed because they are privileged and confidential. Id. at 1-2. She contends that she has not put her mental health at issue given she raises only a "garden variety" claim of emotional damage related to the death of her husband. Id. On the same grounds, in her opposition, Plaintiff moves to quash the subpoena to Mr. Miller as to her records but offers no objection to production of records related to Craig Prescott. Id. at 2. Thus, the motion as to the records of Craig Prescott is **GRANTED**. The matter is more complicated as to Rachel Prescott.

Rule 45 of the Federal Rules of Civil Procedure requires the Court on timely motion to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii). Under Rule 45, a nonparty served with a subpoena may make objections within 14 days after service, or before the time for compliance if it is less than 14 days. Fed. R. Civ. P. 45(c)(2)(B). "Only the witness can prevent disclosure by objection. The party to whom the subpoenaed records pertain cannot simply object. Rather, a protective order or motion to quash the subpoena is required." Schwarzer, et al., Cal. Prac. Guide: Fed. Civ. Proc. before Trial, § 11:2291. A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005).

---

[3]The failure of a responding party to file a responsive pleading to an order to show cause why a contempt citation should not issue may, warrant a finding that the applicant's allegations are uncontested as a matter of law. See Rogers v. Webster, 776 F.2d 607, 611 (9th Cir. 1985). The responding party is entitled to a hearing on the OSC where, unless waived, live testimony must be taken or an opportunity afforded to cross examine the declarants. See Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 495 (9th Cir. 1983). However, where the affidavits offered in support of a finding of contempt are uncontroverted, a full evidentiary hearing is not essential to due process and the trial court may treat the facts set forth in the uncontroverted affidavits as true. See Peterson v. Highland Music, 140 F.3d 1313, 1324 (9th Cir. 1998). Without an issue of material fact, the district court is only required to give notice and an opportunity to be heard. See United States v. Ayres, 166 F.3d 991, 996 (9th Cir. 1999).

While "a nonparty's failure to timely make objections to a Rule 45 subpoena generally requires the court to find that any objections have been waived, ... '[i]n unusual circumstances and for good cause, . . . the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].' Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D.Cal. 2005) (internal citations omitted). Here, even if Rachel Prescott's mental health was at issue–and the Court is not convinced that it is[4]– the Court would be justified in concluding that the subpoena served upon Mr. Miller for her mental health records is overbroad. For example, if the purpose of the obtaining the records is to evaluate the extent of the emotional harm suffered by Mrs. Prescott due to the death of Craig Prescott, then relevant to this analysis would be her counseling records *after* Mr. Prescott's death–not the records from three years before. (Doc. 57-2 at 38) On the other hand, counsel clarified at the hearing that they are not seeking Mrs. Prescott's mental health records in general, but only those records that bear on the relationship between her and Craig Prescott. Counsel reported that this information is necessary to determine the value of the lost society, comfort and companionship claimed in the Fourth and Fifth Causes of Action. Thus, the Court considers only whether the records of counseling–both before Craig Prescott's death and after–related only to the relationship between Rachel Prescott and Craig Prescott should be produced.

In any event, "under Rule 26(c), the Court may sua sponte issue a protective order for good cause shown." McCoy v. Southwest Airlines Co., Inc., 211 F.R.D. 381, 385 (C.D.Cal. 2002); see also, Coleman v. Schwarzenegger, 2007 U.S. Dist. LEXIS 99340 at *17-18 (E.D.Cal. Nov.29, 2007) ("Under Federal Rule of Civil Procedure 26(c), and in the inherent discretion of a court to manage its own discovery, a court may sua sponte enter a protective order for good cause shown. A protective order may include an order that "discovery not be had.") (internal citations omitted); Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 558 n. 4 (D.N.J. 1994) ("[U]nder Fed.R.Civ.P. 26(c), and the discretion allocated this court in the management of discovery generally, where a court determined to deny a motion to compel, it may, if circumstances so justify, enter a protective order sua sponte. The

---

[4] Plaintiffs seek "compensatory damages" and "special damages" but do not seek "general" damages. The Court makes no finding whether "compensatory damages" means "general damages" in this case.

7

converse is likewise a possibility.").

Plaintiff's bare objection to the motion to compel rests on the assertion that she is not seeking greater than ordinary, temporary emotional distress damages. (Doc. 72 at 2) Had her emotional distress damages been the sole grounds for the records produced, the Court would have been more swayed by Mrs. Prescott's objection. Jaffee v. Redmond, 518 U.S. 1, 12 (1996).[5] However, given that in the Fourth and Fifth Causes of Action Mrs. Prescott is seeking damages based upon the lost "society, comfort, companionship, care and protection" of Craig Prescott, the nature of this relationship is placed squarely at issue.

As the party seeking to prevent the discovery of otherwise relevant material, Plaintiff carries the burden of asserting and demonstrating that a particular privilege applies. Bible v. Rio Props., Inc., 246 F.R.D. 614, 620 (C.D.Cal. 2007) ("[U]nder federal law, the party claiming [the federal privilege] has the burden of proving the applicability of the doctrine."); Voth v. Albright, No. CIV S–04–2103 LKK GGH P, 2006 U.S. Dist. LEXIS 79128, at *22, 2006 WL 3001362 (E.D.Cal. Oct. 20, 2006) ("[T]hat the party asserting the privilege has the burden to establish its applicability is an undisputed proposition[.]"). However, Plaintiff offers no argument or analysis that production of her mental health records related to the quality of her relationship with Craig Prescott should be barred by the psychotherapist-patient privilege.

Based upon Plaintiff's failure to carry her burden to demonstrate that the privilege applies, coupled with Mrs. Prescott's failure to file a timely motion to quash the subpoena and Mr. Miller's failure explicitly assert the privilege, the Court **GRANTS** the motion. At the time of his deposition, Mr. Miller is **ORDERED** to produce all records from January 2006 to the date of this order, of counseling provided to Rachel Prescott related to her relationship with Craig Prescott.

3. <u>County's motion to compel responses to interrogatories and document requests should be granted.</u>

---

[5] Generally, district courts follow two approaches to determining whether the privilege has been waived. Fritsch v. City of Chula Vista, 187 F.R.D. 614, 621 (S.D. Cal. 1999); Wilson v. Nesbeth, 2010 U.S. Dist. LEXIS 120527, at *2 (E.D. Cal. Oct. 29, 2010). Some courts find a waiver of the privilege whenever emotional distress damages are sought. Fritsch, 187 F.R.D. at 621-24 (collecting cases). Others take a more narrow approach and find waiver only where emotional distress claims are more than mere "garden variety" or incidental emotional distress damages claims. Id. at 624-29 (collecting cases); Wilson, 2010 U.S. Dist. LEXIS 120527 at *2-4 (following the narrower approach and finding no waiver where plaintiff did not seek damages for emotional injuries).

8

A propounding party may request documents "in the responding party's possession, custody, or control." Fed.R.Civ.P. 34(a). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed.R.Civ.P. 34(b). Further, a request is sufficiently clear and unambiguous if it "places the party upon 'reasonable notice of what is called for and what is not.' " Kidwiler v. Progressive Paloverde Ins. Co., 192. F.R.D. 193, 202 (N.D.W.Va. 2000), quoting Parsons v. Jefferson–Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992); see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2011) Discovery, para. 11: 1886 (test is whether a respondent of average intelligence would know what items to produce).

Upon receipt of a discovery request, the responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed.R.Civ.P. 34(a). In the alternative, a party may state an objection to a request, including the reasons. Fed.R.Civ.P. 34(b)(2)(A)-(B). When a party fails to respond to a discovery request, the propounding party may seek an order compelling a discovery response. Fed.R.Civ.P. 37(a)(3)(B).

Originally, Plaintiff A.P.'s responses to the discovery requests were due on April 28, 2011 and Marilyn Prescott's were due on April 28, 2011 for set one and on June 27, 2011 for set two. (Doc. 57-1 at 2-3.) On May 4, 2011, Marilyn Prescott provided responses to the interrogatories but did not provide responses to the requests for production of documents. (Id. at 2). On May 20, 2011, counsel sent a meet and confer letter regarding the failure of A.P. to respond to the first set of interrogatories and production requests. (Doc. 57-1 at 3.) Following this, on June 2, 2011, Plaintiff's counsel requested electronic copies of all outstanding discovery requests and Defense counsel complied. (Id.) On June 13, 2011, counsel again inquired as to when the responses of both A.P. and Marilyn Prescott would be provided. Id. In response, Rachel Prescott provided responses to the interrogatories but no responses were provided by A.P. or Marilyn Prescott. Id. To date, Marilyn Prescott and A.P. have failed to respond to the document production requests and A.P. has failed to respond to the interrogatories. Id.

Given Plaintiffs' failure to respond to the discovery requests, County's motion to compel answers to interrogatories and production of documents is **GRANTED**.

**III.   CONCLUSION**

In accordance with the above, it is **HEREBY ORDERED** that:

1. Defendants' motion to compel the deposition of Dr. Pick is **DENIED**;
2. Defendants' motion to compel the deposition of Byron Miller is **GRANTED**; Mr. Miller **SHALL** appear for deposition no later than December 2, 2011;
3. At his deposition, Mr. Miller **SHALL** produce a copy of all counseling records for Rachel Prescott related to her relationship with Craig Prescott dated from January 2006 through the date of this order;
4. At his deposition, Mr. Miller **SHALL** also produce a copy of all counseling records for Craig Prescott dated from January 2006;
5. Defendants **SHALL** serve Mr. Miller a copy of this order via first class mail along with a deposition notice for the date and time selected by Defendants for the deposition and **SHALL** provide him oral notice of the deposition as soon as practicable;
6. County's motion to compel discovery responses is **GRANTED**. Marilyn Prescott and A.P. are **ORDERED** to produce discovery responses to County's request for production of documents set one and two and A.P. is **ORDERED** to provide responses to the interrogatories, set one.  Marilyn Prescott and A.P. shall make these responses **without** noting any objections.

IT IS SO ORDERED.

Dated:   **November 22, 2011**                                        /s/ Jennifer L. Thurston
                                                                                    UNITED STATES MAGISTRATE JUDGE