1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RACHEL PRESCOTT, et al.,              ) Case No.: 1:10-CV-00592 JLT
                                           )
12                   Plaintiffs,           ) ORDER GRANTING IN PART AND DENYING
                                           ) IN PART DEFENDANTS' MOTION FOR ISSUE
13       v.                                ) SANCTIONS AND/OR MONETARY
                                           ) SANCTIONS IN CONTEMPT OF COURT
14   COUNTY OF STANISLAUS, et al.,         ) ORDERS
                                           )
15                   Defendants.           ) (Doc. 94)
     _____     )
16

17           Defendants County of Stanislaus, Adam Christianson, Chad Blake, Gary Lake, Adam

18   Voortman, Shaun Murphy, Brian Munguia, Santos De Los Santos, Richard Aziz, and John Boy

19   Palarca (collectively, "Defendants") seek an order holding Plaintiffs counsel and third-party Byron

20   Miller in contempt for failure to comply with the Court's orders.  (Doc. 94).

21           Defendants seek an award of issue sanctions or, in the alternative, monetary sanctions for the

22   failure to comply with discovery orders regarding written discovery and a motion to compel the

23   testimony and production of documents by Byron Miller.  (Doc. 94-1 at 2).  Plaintiffs and Byron

24   Miller filed oppositions to the motion (Docs. 101-103), to which Plaintiff replied on February 1,

25   2012.  (Doc. 104).  For the following reasons, Defendants' motion for sanctions is **GRANTED IN**

26   **PART AND DENIED IN PART**.

27   ///

28   ///

                                            1

# I.      PROCEDURAL HISTORY

## A.      Plaintiffs' Allegations

Plaintiffs are the surviving relatives of Craig Prescott, who died while in custody at the Stanislaus County Jail on April 13, 2009.  Plaintiffs initiated this action April 6, 2010, by filing a complaint for violation of civil rights and wrongful death (Doc. 2), which was amended on April 10, 2010.  (Doc. 35).

Plaintiffs allege that while Craig Prescott was detained at Stanislaus County Jail, Mr. Prescott exhibited "bizarre" behavior consistent with drug psychosis.  (Doc. 35 at 4).  On April 11, 2011, officials extracted Mr. Prescott from his cell.  *Id.*  According to Plaintiffs, when Mr. Prescott resisted, jail officials used force, including Tasers and water balls, to subdue Mr. Prescott, who died as a result of the altercation.  *Id.* at 5-6.  Therefore, Plaintiffs seek monetary damages for the use of excessive force, inadequate medical care, failure to supervise and train, and deprivation of familiar relations in violation of the Fourteenth Amendment.  *Id.* at 6-10.  In addition, Plaintiffs seek to recover damages for wrongful death.  *Id*. at 9.

## B.      Events Relevant to the Pending Motion

Defendant County of Stanislaus ("the County") propounded Special Interrogatories, Set One and Requests for Production of Documents, Set one, on Rachel Prescott, Marilyn Prescott, and A.P. on March 25, 2011.  (Doc. 57-1 at 2).  Responses to these discovery requests were due April 28, 2011, but none were provided to the County within the specified time.  *Id.*  After the County's counsel contacted Plaintiffs' counsel regarding the discovery, the County received Marilyn Prescott's responses to Special Interrogatories, Set One, but no responses to the Request for Production of Documents, Set One.  *Id.* at 3.

On May 23, 2011, the County served Marilyn Prescott with its Request for Production of Documents, Set Two, to which responses were due June 27, 2011.  (Doc. 57-1 at 3).  However, Marilyn Prescott failed to respond to the discovery request.  *Id.*  On October 14, 2011, Defendants filed a motion to compel responses to interrogatories and requests for production by A.P. and two sets of requests for production of documents by Marilyn Prescott.  (Doc. 57)

On July 29, 2011, Defendants served two separate subpoenas duces tecum upon Byron Miller, requesting the production of records relating to Mr. Miller's counseling of Craig Prescott and Rachel Prescott. (Doc. 94-1 at 3). In addition, Defendants noticed the deposition of Mr. Miller for September 12, 2011, which with Mr. Miller was served on August 25, 2011. *Id.* On August 29, 2011, Defendants received a letter from Mr. Miller in which he stated that he would not appear for a deposition without receiving consent (presumably, from by Rachel Prescott) or a court order. *Id.* In addition, Defendant received a letter from Mr. Miller on September 7, 2011, forwarded from the subpoena process server, in which Mr. Miller indicated that he would not produce records without consent or a court order. *Id.*

On October 14, 2011, Defendants filed a motion to compel Mr. Miller to attend his deposition and produce the requested documents, and to compel Plaintiffs' responses to discovery requests (Doc. 56), and the Court granted Plaintiffs' requests (Docs. 77-78). The Court ordered Mr. Miller to appear for deposition no later than December 2, 2011, and to "produce a copy of all counseling records for Rachel Prescott related to her relationship with Craig Prescott dated from January 2006 through the date of [the] order" and "a copy of all counseling records for Craig Prescott dated from January 2006." (Doc. 78 at 10). In addition, the Court ordered Plaintiffs Marilyn Prescott and A.P. to produce their response–without noting objections–to the County's discovery requests without noting objections thereto. *Id.*

Following the Court's order, Defendants noticed the deposition of Mr. Miller for November 30, 2011. (Doc. 94-1 at 3). However, Mr. Miller failed to appear for his deposition, and on December 1, 2011 informed Defendants he had been out of town and did not receive the Notice of Deposition.[1] *Id.* at 3-4.

Plaintiffs filed a motion for reconsideration of the Court's order compelling Mr. Miller's deposition and disclosure of records on December 4, 2011 (Doc. 79), which was denied by the Court on December 8, 2011 (Doc. 80). On January 3, 2012, the Court issued its Second Amended Order regarding the County's motion to compel discovery responses, and ordered Marilyn Prescott and

---

[1]At the hearing, counsel reported that they had left Mr. Miller a voice mail message also but did not actually speak to him in advance of the scheduled deposition.

A.P. to produce the discovery responses without objections within five days of the date of service of the order, or by January 8, 2012.  (Doc. 87).

On January 10, 2012, the  Court held a telephonic conference with the parties.  (Doc. 90).  At that hearing, Plaintiff's counsel, Mr. Yourke, requested the Court issue an order staying the deposition of Byron Miller, scheduled for the next day.  *Id*.  Mr. Yourke reported that he intended to file a petition to writ to the Ninth Circuit challenging the Court's order compelling the deposition. *Id*.  However, Mr. Yourke admitted that he had not yet done so.  The Court denied the request,

> In light of the undue delay in taking any action since the Court issued it's order denying the motion for reconsideration 80, in light of the impending discovery cutoff and in light of the fact that Plaintiff has never opposed Mr. Miller's deposition and opposed only the accompanying subpoena for documents 72, Plaintiff's request to continue the deposition of Byron Miller is DENIED.

*Id*.

Nevertheless, the next day, on January 11, 2012, the Court held another telephonic conference with the parties, at which defense counsel reported that Mr. Miller had been instructed by Plaintiffs' counsel to not appear for his deposition set for later in the morning.  (Doc. 93).  Mr. Yourke admitted that he offered to represent Mr. Miller and instructed him not to appear for his deposition because Plaintiffs intended to seek intervention by the Court of Appeals.  *Id*.  Once again, Mr. Yourke confirmed that no writ had been filed. The Court reiterated that Mr. Miller was ordered to appear for his deposition.  *Id*.

Mr. Miller appeared at the deposition on January 11, 2012, but "refused to provide the requested documentation and refused to provide any testimony regarding the psychotherapy he may or may not have provided to Plaintiffs."  (Doc. 94-1 at 4).  Defendants report, "Mr. Miller indicated he would not provide documentation or testimony without first obtaining counsel, which [he] claimed 'he only became aware he was allowed to do that morning.'"  *Id*.  In addition, Mr. Miller said he "decided to obtain neutral counsel of his own and to appear at the scheduled deposition to explain his decision but not to obey the Court Order."  *Id*.

Though Mr. Yourke indicated on January 10 and January 11, 2012, that he would file the petition for writ immediately, review of the Ninth Circuit's docket for this writ indicates that it was

not filed until January 18, 2012.[2]  On January 30, 2012, Mr. Yourke requested that the Ninth Circuit Court of Appeals decide the writ on an expedited basis.  However, at no time did Plaintiff seek a stay from the Court of Appeals during the pendency of the writ.

On January 19, 2012, Defendants filed the motion now pending before the Court for Plaintiffs' failure to comply with the Court's orders to respond to the County's discovery requests and Mr. Miller's failure to comply with the Court's order to appear at his deposition and produce the requested documents.  (Doc. 94).  Defendants seek sanctions pursuant to Fed. R. Civ. P. 37.  *Id.*

On February 3, 2011, shortly after the hearing on Defendants' motions for sanctions, the Ninth Circuit issued its ruling denying Plaintiff's petition and finding Mrs. Prescott "has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus."

## II.      LEGAL STANDARDS

Pursuant to the Federal Rules of Civil Procedure, if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b).  "Just orders" may include the following:

> (i)      directing that the matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims;
>
> (ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)    striking pleadings in whole or in part;
>
> (iv)    staying further proceedings until the order is obeyed;
>
> (v)     dismissing the action or proceedings in whole or in part;
>
> (vi)    rending a default judgment against the disobedient party; or

---

[2]The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The docket of Ninth Circuit Court of Appeals is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th. Cir. 1980). As such, the docket of the Ninth Circuit Court of Appeals in case No. 12-70184, is subject to judicial notice.

1
        (vii)     treating as contempt of court the failure to obey any order except an order
                   to submit to a physical or mental examination.

2

3 Fed. R. Civ. P. 37(b)(2)(A).  The Ninth Circuit explained, "Federal Rule of Civil Procedure 37

4 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails

5 to comply with the rules of discovery or with court orders enforcing those rules."  *Wyle v. R. J.*

6 *Reynolds Indus., Inc.*, 709 F.2d 857, 589 (9th Cir. 1983) (citing *Nat'l Hockey League v. Metro.*

7 *Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).  In addition, Rule 37 provides for an award of

8 monetary sanctions: "[T]he court *must* order the disobedient party, the attorney advising that party,

9 or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

10 failure was substantially justified or other circumstances make an award of expenses unjust."  Fed.

11 R. Civ. P. 37(b)(2)(C) (emphasis added).  Notably, "sanctions may be imposed even for negligent

12 failure to provide discovery."  *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir.

13 1985) (citing *Lew v. Kona Hospital*, 754 F.2d 1420, 1427 (9th Cir. 1985); *Marquis v. Chrysler*

14 *Corp.*, 577 F.2d 624, 642 (9th Cir. 1978)).

15       Likewise, discovery may be sought from nonparties. Fed. R. Civ. P. 45.  A Rule 45 subpoena

16 is the method to do so.  Rule 45 subpoenas permit discovery from nonparties equivalent to discovery

17 from parties under Rule 34. (See Adv. Comm. Note on 1991 Amendment to Fed. R. Civ. P. 45.)  A

18 nonparty served with the subpoena duces tecum may objection to the subpoena duces tecum within

19 14 days after service or before the time for compliance, if less than 14 days. Fed. R. Civ. P.

20 45(c)(2)(B). "Only the [nonparty] can prevent disclosure by objection. The party to whom the

21 subpoenaed records pertain cannot simply object. Rather, a protective order or motion to quash the

22 subpoena is required." Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil

23 Procedure Before Trial, ¶ 11:422 (2002); *see also Pennwalt Corp. v. Durand-Wayland, Inc.,* 708

24 F.2d 492, 494 n.5 (9th Cir. 1983) ("Once the person subpoenaed objects to the subpoena . . . the

25 provisions of Rule 45(d) come into play. Then the party seeking discovery must obtain a court order

26 directing compliance.").

27       According to Rule 45, the Court has the authority to hold a non-party in contempt for failing

28 to comply with its orders.  Rule 45 provides, "The issuing court may hold in contempt a person who,

having been served, fails without adequate excuse to obey the subpoena." "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court." *Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) (citing Advisory Committee Notes to Rule 45(a) 1991 amend. ["Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions"] ); *Halawani v. Wolfenbarger,* 2008 U.S. Dist. LEXIS 100482, 2008 WL 5188813, *7 (E.D. Mich. Dec. 10, 2008) (same)).

Courts have the inherent power to enforce their orders through civil contempt. See *Spallone v. United States*, 493 U.S. 265, 276 (1990) ("courts have inherent power to enforce compliance with their lawful orders through civil contempt," citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Civil contempt is characterized by the court's desire to compel obedience with a court order, or to compensate the contemnor's adversary for the injuries which result from the non-compliance. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders. *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). "Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense." *Id.*, at 856, citations omitted.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F. 3d 1228, 1239 (9th Cir. 1999). Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). To assess whether an alleged contemnor has taken "every reasonable step" to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion. *See Stone v. City and County of San Francisco*, 968 F.2d at 856-57. A party's subjective intent and willfulness is irrelevant. See *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Donovan v. Mazzola*, 716 F.2d at 1240. Thus, the disobedient party's good

1  faith or intent in attempting to comply does not bar a finding of contempt.  *Stone v. City and County*

2  *of San Francisco*, 968 F.2d at 857.

3        Sanctions for civil contempt are imposed to coerce compliance with a court order, to

4  compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or

5  both.  *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 207 (1999); *United States v. United*

6  *Mine Workers of America*, 330 U.S. 258, 303-304 (1947). "Generally, the minimum sanction

7  necessary to obtain compliance is to be imposed." *Whittaker Corp. v. Execuair Corp.*, 953 F. 2d 510,

8  517 (9th Cir. 1992), citing *Spallone v. United States*, 493 U.S. at 280. Where the purpose of the

9  contempt order is to ensure a party's compliance, the court must "consider the character and

10  magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any

11  suggested sanction in bringing about the result desired." *Bademyan v. Receivable Management*

12  *Services Corporation*, No. CV-08-00519, 2009 U.S. Dist. LEXIS 21923, 2009 WL 605789 (C.D.

13  Cal. March 9, 2009), citing *Whittaker Corp v. Execuair Corp.*, 953 F.2d at 516.

14  **III.    DEFENDANTS' MOTION FOR SANCTIONS**

15        Defendants assert they are forced to bring the motion "because of the failure of Plaintiffs to

16  provide responses to written discovery as required by Court order, and the failure by Byron Miller to

17  comply with the Order of this Court compelling his deposition and production of documents

18  pursuant to a valid subpoena duces tecum . . ."  (Doc. 94-1 at 2).  Defendants contend Plaintiffs are

19  in contempt of the Court Order compelling plaintiffs Marilyn Prescott and A.P. to respond to the

20  discovery requests, and should be precluded from raising the issues related to the discovery requests

21  at trial.  *Id.* at 7-10.  In addition, Defendants argue they are entitled to "issue sanctions" as a result of

22  Mr. Miller's refusal to comply with the Court's orders.  *Id.* at 10.

23        First, Defendants assert the interrogatories to A.P. "seek information pertaining to any claims

24  for relief asserted by Plaintiff A.P. and any concomitant damages sought thereby," while the requests

25  for document production "seek documentation in support of both liability and damages for claims for

26  relief asserted by Plaintiff A.P."  (Doc. 94-1 at 8).  Defendants contend the failure to provide

27  responses to the written discovery "is causing prejudice to Defendants and their efforts to properly

28

8

prepare a defense to the wrongful death claim for relief and damages asserted in the Complaint by Plaintiff A.P." *Id.*

In addition, Defendants contend the "Requests for Production of Documents propounded to Plaintiff Marilyn Prescott seek documentation in support of both liability and damages for the claims for relief asserted by Plaintiff Marilyn Prescott." (Doc. 94-1 at 9) (emphasis omitted).  According to Defendants, "[S]everal categories of documents sought by Set Two are in response to testimony regarding the requested documents provided by Plaintiff Marilyn Prescott at her deposition.  Refusal to provide these documents that have already been acknowledged to exist[] even further frustrated the efforts of Defendants to properly prepare a defense . . ." *Id.* at 9-10.

Further, Defendants argue Mr. Miller's refusal to comply with the Court's orders to provide deposition testimony and respond to the subpoena duces tecum has prejudiced Defendants because they "have been prevented from obtaining testimonial evidence regarding Plaintiff Rachel Prescott's relationship with her deceased husband, as well as information on how that death has affected her thereafter." (Doc. 94-1 at 10).  Defendants assert they "have been unable to adequately prepare for trial and/or adequately prepare a defense" "relating to the alleged 'loss of society, comfort, companionship, care and protection of the decedent.'" *Id.*

Based on the foregoing, Defendants request the Court strike the wrongful death claims for relief and related damages.  In the alternative, or in addition to striking the claims, Defendants request monetary sanctions against Plaintiffs and Mr. Miller for "for their continued and repeated refusal to comply with the Federal Rules of Civil Procedure and multiple Orders of this Court." (Doc. 94-1 at 11).

Because the parties agreed at the hearing that there are no issues of material fact, Defendants' motion for civil contempt sanctions for failure to timely and fully comply with the subpoena duces tecum directed to a nonparty, as supported by this Court's August 24, 2011 order, was taken under

submission without taking any further evidence.  *See United States v. Ayres*, 166 F.3d 991, 996 (9th Cir. 1999).[3]

## IV.    PLAINTIFFS' OPPOSITION

On January 30, 2011, Plaintiffs opposed the request for sanctions, asserting "Plaintiffs have served Defendants with responses to all outstanding discovery requests in this Court's Order of January 23, 2012[4]: Marilyn Prescott's Responses to Requests for Production of Documents, Sets One and two, and Plaintiff [A.P.'s] Answers to Interrogatories and Responses to Requests for Production of Documents."  (Doc. 101 at 2).  Plaintiffs acknowledge their responses were untimely, and contend "[t]he delay was inadvertent and caused by the press of business."  *Id.*

Further, Plaintiffs assert sanctions should not be awarded for Mr. Miller's failure to comply with the Court's orders, and again assert Plaintiffs' position that the Court's orders were contrary to law.  (Doc. 101 at 2).  Plaintiffs reported that a Writ of Mandamus was filed with the Ninth Circuit Court of Appeals, and argued the Court should await the Ninth Circuit's ruling "before considering whether to issue an award of sanctions to "[D]efendants.  *Id.* at 4.

## V.    OPPOSITION BY BYRON MILLER

Mr. Miller filed an opposition to Defendants' motion, asserting he "is available and prepared to provide deposition testimony and awaits available dates from defense counsel so the deposition may proceed in accordance with this Court's prior order."  (Doc. 102 at 4).  Mr. Miller contends he is "available to proceed with the deposition . . ."  *Id.* at 5.  Therefore, Mr. Miller concludes "there is no basis for issue or monetary sanctions nor a contempt citation."  *Id.*

///

---

[3]In *Ayres*, 166 F.3d at 996, the Ninth Circuit stated,

While we do not encourage the imposition of contempt sanctions "on the papers," and while we reaffirm our admonition in Peterson that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits," 140 F.3d at 1324, we conclude that because the issue of contempt was effectively uncontroverted, the procedures employed by the district court afforded Ayres notice and an opportunity to be heard sufficient to satisfy due process. We therefore affirm the district court's finding of civil contempt.

[4] Because the Court did not issue any orders in this case on January 23, 2012, the Court presumes that Plaintiffs intend to refer to the November 22, 2011 Amended Order or the January 3, 2012 Second Amended Order.

1   **VI.   DEFENDANTS' REPLY**

2   On February 1, 2012, Defendants filed their reply to the opposition.  (Doc. 104).  According

3   to Defendants, Plaintiffs emailed responses with electronic signatures, though Defendants never

4   consented to service via electronic mail, and the responses contain objections though the Court

5   ordered Plaintiffs to respond without objections.  *Id.* at 4.  Defendants note, "the responses indicate

6   that responsive documents will be produced, but no responsive documents were included and none

7   have been received by Defendant to date."  *Id.*

8   In addition, Defendants argue the sanction of issue preclusion should be imposed based upon

9   Mr. Miller's refusal to comply with the Court's orders, because the Court determined Plaintiffs

10   waived the psychotherapist-patient privilege.  (Doc. 104 at 5).  Defendants argue, "Plaintiffs and

11   Miller have continually refused to comply with Court Orders and patently continue to do so."  *Id.* at

12   7.

13   **VII.   DISCUSSION AND ANALYSIS**

14   Plaintiffs failed to respond to Defendants' written discovery requests, which caused the

15   County to file a motion to compel responses to discovery.  In spite of the Court's order granting the

16   motion to compel, Plaintiffs Marilyn Prescott and A.P. failed to provide the responses to the

17   County's requests for production of documents, and A.P. failed to provide responses to the request

18   for interrogatories.  Over six weeks later, when alerted to the failure of its order to set forth a specific

19   time frame for A.P.'s and Marilyn Prescott's responses, the Court ordered Plaintiffs to file their

20   discovery responses within five days of the date of service of the order, or by January 8, 2012.  (*See*

21   Doc. 87 at 10).  Nevertheless, Plaintiffs failed to provide their responses to the discovery requests in

22   compliance with the Court's Orders.

23   Furthermore, Mr. Yourke reported that he told Mr. Miller that he would seek intervention by

24   the Court of Appeals and iterated his belief that the Court's order was incorrect.  At the hearing, he

25   summarized his comments to Mr. Miller as, "I'd appreciate it if you wouldn't attend the deposition."

26   Mr. Yourke asserted Mr. Miller "very intelligently" did not follow his advice to not appear at the

27   deposition.  However, though Mr. Miller appeared at the deposition, he expressed his need for

28   independent counsel and refused to testify or comply with the Court's order. The Court has little

11

1   doubt that Mr. Miller's refusal to testify at the January deposition was due to the advice given him by

2   Mr. Yourke.[5]

3          Moreover, Plaintiffs have not been fully forthright with the Court.  While asserting that all

4   discovery has been providing, they omit that they have failed to provide the actual documents

5   requested and have failed to provide a verification on A.P.'s behalf.  At the hearing, Mr. Yourke

6   confirmed the responsive documents were not attached to the e-mails sent to Defendants and

7   asserted, once again, that they would be produced.  In addition, Mr. Yourke acknowledged the

8   Court's order that no objections would be permitted, and stated he would produce *all* responsive

9   documents.[6]  Significantly, however, the Ninth Circuit has found that "[b]elated compliance with

10  discovery orders does not preclude the imposition of sanctions."  *Leon v. IDX Systems Corp.*, 464

11  F.3d 951, 959 (9th Cir. 2006) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S.

12  639, 643 (1976)).

13         **A.      Issue sanctions**

14         Defendants contend that A.P. and Marilyn Prescott should be precluded from introducing any

15  evidence on the topics that were the subject of inquiry in the discovery requests at issue, and should

16  not be permitted to pursue their wrongful death claims.  In addition, Defendants argue Rachel

17  Prescott should be precluded from asserting a wrongful death claim due to Mr. Miller's failure to

18  comply with the Court's orders to provide deposition testimony and respond to the subpoena duces

19  tecum.

20         The appropriateness of a sanction is within the discretion of the Court. The Ninth Circuit has

21  identified factors that the courts should consider in determining the appropriateness of discovery

22  _____

23         [5]Though Mr. Yourke indicated that he felt that he had been placed in an untenable position with Mr. Miller, in the
    Court's view, the reason Mr. Yourke felt compromised in advising Mr. Miller *was because he had a clear, ethical conflict.*
24  Mr. Yourke could not advise Mr. Miller in a way that would protect Mr. Miller's own interests because to do so  would
    damage Mrs. Prescott's position.  Likewise, by instructing Mr. Miller to defy the Court's order and placing Mr. Miller in peril
25  of being found in contempt, Mr. Miller served Mrs. Prescott's ends.  Indeed, this *is* untenable.

26         [6]Moreover, Mr. Yourke agreed that all non-privilege based objections were waived by Plaintiffs' lack of timely
    response.  However, initially, he argued that the lack of timely response  would not waive privilege-based objections.  Even
27  if this position was correct–though the Court disagrees (*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473
    (9th Cir. 1992); *Davis v. Fender*, 650 F.2d 1154, 1160 (9th Cir. 1981)–Mr. Yourke admitted that he failed to provide a
28  privilege log.  As a result, Mr. Yourke agreed that all objections were withdrawn and all documents would be produced.

1    sanctions.  See *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citing *Wanderer v.*

2    *Johnston,* 910 F.2d 652, 656 (9th Cir. 1990)).  In *Wendt*, the court addressed the propriety of a

3    preclusion order barring the introduction of expert testimony as a sanction against the plaintiffs'

4    former counsel for failure to disclose damages evidence and for the untimely disclosure of expert

5    witnesses. The Ninth Circuit considered the following factors: "1) [T]he public's interest in

6    expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice

7    to the defendants; 4) the public policy favoring disposition of cases on their merits; [and] 5) the

8    availability of less drastic sanctions." *Id*.

9           Here, Plaintiffs and their counsel have acted in a dilatory fashion toward their discovery

10   obligations and have encouraged defiance of this Court's orders.  Indeed, such conduct *could* justify

11   the sanction of issue preclusion.  However, the fact that this sanction can be imposed does not

12   necessarily mean that it should. "The Ninth Circuit gives 'particularly wide latitude to the district

13   court's discretion to issue sanctions under Rule 37(c)(1).'" *Oracle USA, Inc. v. SAP AG,* 264 F.R.D.

14   541, 544 (N.D. Cal. 2009) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

15   1106 (9th Cir. 2001); see also *Bollow v. Fed. Reserve Bank of S.F.*, 650 F.2d 1093, 1102 (9th Cir.

16   1981) (as modified) ("The decision whether to penalize a party for dilatory conduct during discovery

17   proceedings is committed to the sound discretion of the trial court.").

18          To preclude Plaintiffs from introducing evidence of damages would essentially result in a

19   dispositive sanction.[7] As the Ninth Circuit explained in *Valley Engineers Inc. v. Electric Engineering*

20   *Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998),

21          What is most critical for case-dispositive sanctions, regarding risk of prejudice and of
            less drastic sanctions, is whether the discovery violations "threaten to interfere with the
22          rightful decision of the case." [Citation omitted.] While contumaciousness toward the
            court needs a remedy, something other than case-dispositive sanctions will often suffice.
23

24   Here, considering the five-factor test articulated in *Wendt*, the Court finds and concludes that

25   imposition of an evidence sanction is not appropriate under the circumstances. The prejudice to

26   _____

27          [7]Moreover, as to A.P., without excusing her failure to provide a verification, it appears that A.P. has provided
     information about her relationship with the decedent.  The only missing documents as to her ,are photographs of her with her
     father. Thus, to prevent her from presenting evidence the nature of her relationship with the decedent, based upon the failure
28   to provide these photos, would be an overly harsh sanction.

                                                     13

1    Defendants resulting from Plaintiffs' dilatory conduct, as well as the untimely production of the

2    requested documents, can be remedied by granting defendant additional time to conduct discovery

3    and ordering Plaintiffs to reimburse Defendants for the expense caused by their conduct.  Thus,

4    factors three and five of the *Wendt* analysis favor Plaintiffs, since a less drastic sanction would

5    remedy the harm Defendants have suffered.  On the other hand, factors one and two favor an issue

6    sanction.  A trial date and the accompanying pretrial conference have been set along with dates for

7    filing dispositive motions.  *Oracle*, 264 F.R.D. at 544 ("The importance of early damages disclosure

8    is reflected in the requirement that initial disclosures at the outset of the case include 'a computation

9    of each category of damages claims,' and the underlying documents 'bearing on the nature and

10   extent of the injuries suffered.'") (citation omitted).  However, Defendants admitted at the hearing

11   that the missing discovery was unlikely to bear on their dispositive motion, if one is filed.  Thus, the

12   Court must determine whether the public policy favoring disposition of cases on their merits

13   outweighs the delay that will result if Plaintiff is not precluded from introducing evidence of

14   damages.  The Court concludes that it does.

15             **B.        Monetary sanctions**

16             As discussed above, Defendants have requested monetary sanctions in addition to, or as an

17   alternative to the issue sanctions.  Here, Plaintiffs' failure to comply with the Court's discovery order

18   caused Defendants to incur $4,795 in attorney fees.  (Doc. 94-1 at 12).  In addition, Defendants assert

19   they incurred $6,930.00 "in bringing the original motion to compel and attempting to obtain the

20   discovery from Plaintiffs and Byron Miller."  *Id.*

21             A party seeking the award of attorney fees "must submit evidence to support the number of

22   hours worked and the rates claimed."  *Global Ampersand, LLC v. Crown Eng'g & Construction*, 261

23   F.R.D. 495, 502 (E.D. Cal. 2009) (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041,

24   1045 (9th Cir. 2000)).  The Ninth Circuit has adopted the "lodestar" approach for assessing the

25   award of attorneys' fees, under which "[t]he 'lodestar' is calculated by multiplying the number of

26   hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."

27   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad*

28   *Credit Corp.*, 244 F.3d , 1145 1449 n.4 (9th Cir. 2001)).  This Court has applied the "lodestar"

14

method to the award of attorney fees under Rule 37. *See, e.g., Global Ampersand*, 261 F.R.D. at 502; *Tandel v. Kings Arco Arena Ltd. P'ship*, 2012 U.S. Dist. LEXIS 8621, at *5-6 (E.D. Cal. Jan. 25, 2012).

### 1.   Fees in conjunction with the motion to compel

Defendants assert they incurred $6,930 "in bringing the original motion to compel and attempting to obtain the discovery from Plaintiffs and Byron Miller." *Id.* When a party's motion to compel discovery is granted in part and denied in part, "the court may. . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5). Significantly, at the time Defendants brought the motions to compel, Defendants did not seek an award of attorney fees. Now, months after the original motions to compel (Docs. 57-58) were filed, without any clear explanation, Defendants seek attorney fees in conjunction with both motions. Thus, though the Court fully appreciates the level of their frustration, Defendants have not provided adequate justification for an award of fees now for the earlier motion.

### 2.   Fees as a result of Plaintiffs' failure to comply with the Court's orders

Rule 37(b)(2)(C) awards monetary sanctions for a party's failure to comply with a discovery order. At the hearing, Plaintiffs asserted sanctions are not appropriate, because "a simple phone call or email" would have sufficed to generate the discovery responses. However, the evidence clearly shows the contrary. Defendants have expended 27.4 hours caused by Plaintiffs' failure to comply with their discovery obligations and the Court's discovery orders and by the "advice" given by Mr. Yourke to Mr. Miller which caused him to refuse to submit to his deposition.

Moreover, Plaintiffs' position–that sanctions should not be awarded–is contrary to Fed.R. Civ. P. 37(b)(2)(C), which states that the Court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added). Plaintiffs have the burden to demonstrate failure was substantially justified, or the award of fees would be unjust. *See Yeti by Molly, Ltd.*, 259 at 1106. However, Plaintiffs failed to meet their burden. At the rate of $175 per hour, the total of $4,795 is a

1  reasonable amount of attorney fees.  Therefore, Defendants have demonstrated they are entitled to

2  this award pursuant to Rule 37.

3          **C.**      **Civil Contempt Sanctions against Mr. Miller**

4         As discussed above, sanctions for civil contempt are imposed to coerce compliance with a

5  court order, to compensate the party pursuing contempt for injuries resulting from the contemptuous

6  behavior, or both.  *Cunningham v*, 527 U.S. at 207 (1999); *United Mine Workers of America*, 330

7  U.S. at 303-304.  In his opposition to the motion for sanctions, Mr. Miller asserted he is "available to

8  proceed with the deposition . . ." (Doc. 102 at 5).  In addition, at the hearing, counsel for Mr. Miller

9  confirmed he is "ready and willing to testify," and to comply with the subpoena duces tecum to

10  produce documents at the time of deposition.

11         Given the assurances of Mr. Miller that he intends to comply with the Court's order and will

12  appear at the time determined and will provide the requested documents, the Court finds sanctions to

13  coerce compliance with the Court's order are unnecessary.  Furthermore, it seems apparent that Mr.

14  Miller's failure to comply with the Court's order to provide deposition testimony and to produce the

15  subpoenaed documents was as a direct result of Mr. Yourke's advice provided on January 11, 2012.

16  Therefore, the Court finds monetary sanctions against Mr. Miller are not appropriate.

17  **VIII.**   **CONCLUSION AND ORDER**

18         Defendants have demonstrated monetary sanctions are appropriate given Plaintiffs' dilatory

19  conduct and lackadaisical attitude in complying with discovery obligations and with the Court's

20  discovery orders.  However, the sanction of issue preclusion is an extreme remedy, and the factors

21  set forth by the Ninth Circuit weigh against a finding that Plaintiffs should not be permitted to pursue

22  their wrongful death claims against Defendants.

23         Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion for sanctions is

24  **GRANTED IN PART AND DENIED IN PART** as follows:

25         1.    Defendants' requests for issue sanctions against Plaintiffs Rachel Prescott, A.P.

26              Prescott, and Marilyn Prescott are **DENIED**;

27         2.    Defendants' request for monetary sanctions against Plaintiffs is **GRANTED** in the

28              amount of $4,795;

1        3.        Defendants' request for sanctions against Byron Miller is **DENIED**;

2    In addition, the Court **ORDERS**:

3        4.        Mr. Yourke **SHALL** provide to Defendants–via overnight mail so that they are

4                received by Mr. Whitefleet no later than February 7, 2012–responses to all

5                outstanding discovery propounded to Marilyn Prescott and A.P., all requested

6                documents by these discovery requests and the verification by A.P.'s guardian ad

7                litem as to the interrogatory responses;

8        5.        Mr. Miller SHALL appear for deposition and produce the documents ordered by the

9                Court within 10 court days of service of this order.  Defendants  SHALL coordinate

10               with Mr. Miller's attorney to assure his appearance at the deposition.

11   IT IS SO ORDERED.

12   Dated:   **February 4, 2012**                      **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE